UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EDMUND C. SCARBOROUGH,
INTERNATIONAL BONDING &
CONSTRUCTION SERVICES, INC.,
DR. LARRY JAMES WRIGHT,
THE UNDERWRITER'S GROUP,
GEORGE JAMES GOWEN, and
FIRST MOUNTAIN BANCORP,

      Plaintiffs             CASE NUMBER 1:06-cv-00079-RBW

v.

NATIONAL ASSOCIATION OF
SURETY BOND PRODUCERS,

      Defendant

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO CONSOLIDATE FOR PURPOSES OF DISCOVERY

### INTRODUCTION

Defendant National Association of Surety Bond Producers ("NASBP") hereby submits this memorandum of law in support of its motion to consolidate this case (the "*NASBP* Case") with the case of *Edmund C. Scarborough, et al.* v. *Francis J. Harvey, Secretary of the Army, et al.*, Case No.: 05-CV-01427 (the "*Department of Defense* Case"), which is also pending before this Court.  Pursuant to an order dated December 27, 2005 (the "December 27, 2005 Order") – and *with the consent of this Court* – the United States District Court for the Middle District of Florida, Tampa Division transferred the *NASBP* Case "for all further proceedings", including determination by this Court whether "the cases are appropriate for consolidation[.]"

## BACKGROUND

### I. PARTIES AND PLEADINGS

Edmund C. Scarborough ("Scarborough"), Dr. Larry J. Wright ("Wright") and George James Gowen ("Gowen") are plaintiffs in both the *NASBP* Case and the *Department of Defense* Case. International Bonding & Construction Services, Inc. ("ICBS"), Underwriter's Group ("UG") and First Mountain Bancorp ("FNB") are plaintiffs in the *NASBP* Case only, although both the Complaint in the *NASBP* Case and the Amended Complaint in the *Department of Defense* Case identify Scarborough as the Co-Chief Executive Officer of IBCS, Wright as the President of UG, and Gowen as the President of FNB. Plaintiffs further allege in both cases, *inter alia*, that Scarborough is "an individual surety" who provides surety bonds for private and federal construction projects, and that IBCS is engaged in the business of a variety of bonding and construction/administration/consulting services to Scarborough and others; that Wright and UG are engaged in the business of risk underwriting for business, construction and financial institutions; and that Gowen is a "trustee" and that FNB is engaged in the business of establishing escrow and other asset holding accounts at financial institutions.

NASBP is a non-profit organization of professional surety bond producers and brokers, whose members specialize in surety bonding, furnish performance and payment bonds for the construction industry and issue other types of surety bonds that guarantee performance. Harvey, Rumsfeld and Barreto are, respectively, the Secretary of the Army, the Secretary of the Department of Defense and the Administrator of the Small Business Administration ("SBA"), all of which are agencies of the United States government.

The common factual nexus behind plaintiffs' allegations in both cases is the dissemination of "Criminal Alert Notice" 0006-04-CID274 (the "CAN"), by Special Agent

Christopher C. Hamblen of the Department of the Army's Criminal Investigation Division ("CID"), in March 2005. The CAN, entitled "Insurance Fraud – Bonding and Surety" and captioned "For Official Use Only", identified, *inter alia*, Scarborough, IBCS, Wright, Gowen and FNB[1] "as individuals and entities [wh(o)(ich)] have been selling and advertising surety bonds to construction companies[,]" and went on to state, in relevant part:

> None of the listed companies and/or sureties' assets appear on the Federal Acquisition Regulation (FAR 28.203-2) list of acceptable assets for individual sureties. Generally, an individual surety is acceptable for all types of bonds, provided the surety's pledged assets are sufficient to cover the bond obligation. FAR 28.203(A) and FAR 28 203-1 states that an individual surety may be accepted only if a security interest in assets acceptable under FAR 28.203-2 is provided to the government. FAR 28.203-2 includes a list of acceptable assets. Generally, the government will only accept cash, readily marketable assets, or irrevocable letters of credit from a federally insured financial institution from individual sureties to satisfy the underlying bond obligations. FAR 28.203-2 also sets out a list of unacceptable assets, which include speculative assets and other sea [sic] holdings, as utilized by the subjects listed above.

**PLEASE DISSEMINATE IMMEDIATELY TO ALL DoD CONTRACTING OFFICES**

Plaintiffs in the *Department of Defense* Case allege that Special Agent Hamblen and other employees or agents of the federal government disseminated the CAN – to other government employees and/or agents and subsequently to the public – in violation of federal law, *e.g.*, the Privacy Act, and that the government's refusal to retract the CAN also constituted a violation of federal law. Plaintiffs in the *NASBP* Case allege that NASBP disseminated the CAN, and a short accompanying article briefly describing the CAN, in the April/May 2005 issue of NASBP's member newsletter, *Pipeline*, which appeared on NASBP's website. Plaintiffs seek damages against NASBP based upon theories of libel, invasion of privacy and interference with contractual or advantageous business relations.

---

[1] The CAN does not identify UG by this name; instead, the CAN refers to "Underwriters Reinsurance Company, Ltd." and states that this entity is currently operated by Wright.

Plaintiffs allege in both cases that certain statements about them in the CAN were "false", and that the dissemination of the CAN was unauthorized, unprivileged and/or unjustified. Plaintiffs also allege in both cases that they have incurred damages as a result of NASBP's dissemination of these purportedly "false" statements that appeared in the CAN. Plaintiffs in the *Department of Defense* Case further allege that they have incurred damages as a result of the federal government's dissemination of these same purportedly "false" statements in the CAN.

NASBP withdrew both the article and the CAN from its website on June 22, 2005, and advised its members on its website that the CAN was no longer available on the Department of Defense website except on a password-only basis. The Department of Defense has declined to retract the CAN. In response to plaintiffs' allegations, NASBP and the *Department of Defense* Case defendants have denied liability and asserted various affirmative defenses.

## II.     SUMMARY OF ARGUMENT

NASBP's motion for consolidation limited to discovery should be granted, because such consolidation would promote efficiency and judicial economy. As the District Court in Florida acknowledged, the two cases "involve questions of law or fact common [to each other]." Federal Rule 42 (a) permits such orders as will "avoid unnecessary costs and delay[,]" and the consolidation of these two cases for discovery will accomplish that goal, *i.e.*, it will both avoid the parties wasting resources and the Court having to address many of the same issues on multiple occasions.

## III.    COMMON QUESTIONS OF LAW OR FACT

In its Rule 26 (a)(1) disclosure, NASBP identified several witnesses who were known to NASBP at that time as "individuals likely to have discoverable information that NASBP may use to support its defenses", at least 12 of whom NASBP presently anticipates are also likely to have

4

discoverable information that would be material in the *Department of Defense* Case. These witnesses include the three plaintiffs in the *Department of Defense* Case, two individuals presently or formerly employed by NASBP, six employees or agents of the federal government who are identified by name in the Amended Complaint in the *Department of Defense* Case, and Robert Joe Hanson, who is the focus of the CAN. Indeed, given that plaintiffs have specifically alleged in the *Department of Defense* Case that not only the federal government, but also NASBP's, dissemination of the CAN caused plaintiffs to incur damages, it is probable that the other individuals identified in NASBP's Rule 26 (a)(1) disclosure also have information that may be material to issues in the *Department of Defense* Case.

Moreover, the Amended Complaint in the *Department of Defense Case* identifies several other individuals, who, by virtue of their identification in the Amended Complaint, presumably have relevant information with respect to the dissemination of the CAN. These individuals include government witnesses who received the CAN, non-government persons or entities that received the CAN from the government *i.e., not from NASBP*, and certain individuals identified as persons whom *plaintiffs themselves notified about the CAN*.

The fact that there are three plaintiffs common to both cases – and, given their positions as chief executives of the three corporate entities that are parties only to the *NASBP* Case, those plaintiffs presumably have substantial knowledge with respect to the activities of and the alleged damages to those corporate entities – means that their depositions will need to be taken in both cases. The fact that Special Agent Hamblen is identified in both cases as the author of the CAN means that his deposition will need to be taken in both cases. The fact that there are numerous other individuals who are government employees or agents who were involved in the dissemination of the CAN, or who were involved in plaintiffs' subsequent efforts to have the

government retract the CAN, means that their depositions will need to be taken in both cases. The fact that there are numerous individuals who are private citizens who received the CAN from the government, plaintiffs themselves or some source other than NASBP, means that those individuals will need to be deposed in both cases.

The importance of deposing these individuals is particularly compelling with respect to those residing outside the range of a trial subpoena that could be issued by this Court, *i.e.*, whose attendance as witnesses at trial cannot be presumed. It is similarly realistic to presume that government documents relating to the creation and dissemination of the CAN will be the subject of discovery – and, therefore, discovery disputes that may require resolution by the Court – in both cases. Finally, it is realistic to presume that documents and witnesses relevant to the issue of plaintiffs' alleged damages will be a common subject of discovery.

## ARGUMENT

Rule 42 (a) of the Federal Rules of Civil Procedure authorizes the Court to make "such orders concerning proceedings therein as may tend to avoid unnecessary costs and delay." The rule is "designed to encourage consolidation where common questions of law or fact are present[.]" *Midwest Community Council, Inc. v. Chicago Park District*, 98 F.R.D. 491, 499 (N.D. Ill. 1983), *citing* 9 Wright & Miller's Federal Practice and Procedure, §2383 at 260-261 (1971), and *United States v. Knauer*, 149 F.2d 519, 520 (7th Cir. 1945), *aff'd*, 328 U.S. 654 (1946). Thus, consolidation is a procedural device to "promote the aims of all the parties, economize time and effort without circumscribing the opportunity for full litigation of all relevant claims." *Midwest Community Council, supra.*

Among the factors that courts may consider in determining whether to consolidate two or more actions are the following: (1) whether the cases are pending either before the same court for

all purposes or before two different courts within the same judicial district; (2) whether the cases involve a common party; (3) whether the cases have common issues of law; (4) whether the cases have common issues of fact; (5) whether there is risk of prejudice or possible confusion if the cases are consolidated, or if there is any risk, whether it is outweighed by the risk of inconsistent adjudications of factual and legal issues if the cases are tried separately; (6) whether consolidation will result in an unfair advantage; (7) whether consolidation will conserve judicial resources; (8) whether consolidation will reduce the time for resolving cases when compared to separate trials; and (9) whether consolidation will reduce the expense of trying the cases separately. *See Certified/LVI Environmental Services, Inc.* v. *PI Construction Corp.*, 2003 WL 1798542 (W.D. Tex. 2003), p. 2, *citing In re Repetitive Stress Injury Litigation*, 11 F.3d 368, 373 (2d Cir. 1993); *Frazier* v. *Garrison ISD*, 980 F.2d 1514, 1532 (5th Cir. 1993); *Hendrix* v. *Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495-1497 (11th Cir. 1985). Although some of these factors are of limited relevance in the present context because NASBP does *not* seek consolidation for trial, it is nevertheless clear that the actual advantages of consolidation far outweigh any potential disadvantages.

Courts have stressed that the purpose of consolidation is to promote convenience and judicial economy. *Midwest Community Council, supra, citing Johnson* v. *Manhattan Railway Co.*, 289 U.S. 479, 496-497 (1973). The fact that the two cases do not involve identical parties or claims is not dispositive. Rather, the Court should focus upon whether consolidation will avoid unwarranted duplication of discovery and motion practice and protect the orderly progress of the lawsuits. *See In re Enron Corporation Securities Litigation*, 206 F.R.D. 427, 437 (S.D. Tex. 2002)(ordering consolidation of claims against Arthur Andersen LLP, by one group of plaintiffs, with insider trading claims against Enron's directors by other (class action) plaintiffs,

because "the commonality of factual and legal matters here dictates the consolidation of all the suits to prevent waste of both the Court's and the parties' resources.") Moreover, the goal of consolidation is to prevent separate suits from producing conflicting results. *Certified/LVI Environmental Services, Inc. v. PI Construction Corporation, supra.*

It should be apparent that the *NASBP* Case and the *Department of Defense* Case are "inextricably related." *See Biochem Pharma, Inc. v. Emory University*, 148 F.Supp.2d 11, 13 (D.D.C. 2001). The CAN lies at the focal point of both cases: its truth or falsity, and the presence or absence of privilege(s) attached to its dissemination, are crucial to all of plaintiffs' claims and all of defendants' defenses. The fact that plaintiffs may choose to assert different causes of action in each case is not particularly relevant in this context; because plaintiffs in both cases seek to recover money damages for what they claim was the unjustified and unprivileged dissemination of the CAN, most of the proof that is material to either case will be the same.

Based upon its own Rule 26 (a)(1) Disclosure and the detailed identification of relevant witnesses in Amended Complaint in the *Department of Defense* Case, NASBP anticipates that the discovery in both the present case and the *Department of Defense* Case will be extensive. The list of witnesses who have information relevant or potentially relevant to both cases is long, and includes not only government employees and agents, but also private individuals, who have knowledge or information with respect to the creation of the CAN, the dissemination of the CAN within the government, the dissemination of the CAN outside the government, and plaintiffs' alleged damages. It is equally foreseeable that there will be extensive document discovery, not only of NASBP, plaintiffs and the government, but also from third parties who received or disseminated the CAN, or whose contacts with plaintiffs are relevant to the issue of damages.

Consolidation would allow the parties in both cases to depose such witnesses once, which would result in obvious savings of the parties' resources. Similarly, documents would only have to produced a single time. To the extent that the parties were unable to resolve any disputes that arose in the context of deposition or document discovery, consolidation would facilitate the Court having to address such discovery issues in a single proceeding or a single order.

It is important to recognize that consolidation does not merge the two suits into a single cause or change the rights of the parties, or make those who are parties to one suit parties in another. *Midwest Community Council, supra*. Consequently, particularly because NASBP proposes consolidation only for the limited purpose of discovery – such that the two cases would still be tried separately – each case would retain its separate identity and subject to separate judgments and appeals. *See, e.g., Phillips v. Heine*, 984 F.2d 489, 490 (D.C. Cir. 1993); *Lewis Charters, Inc. v. Huckins Yacht Corp.*, 871 F.2d 1046, 1048-1049 (11th Cir. 1989).

For this reason, considerations of prejudice that might otherwise preclude an order consolidating the two cases for *all* purposes – including trial – are not germane in this context. *Compare In re Repetitive Stress Injury Litigation, supra* at 373-374 (vacating orders of consolidation of 44 cases involving "repetitive stress injuries", where plaintiffs' alleged injuries occurred at different worksites and in different occupations, and involved disparate ailments, such that consolidation for all purposes "would occur only at the cost of elemental unfairness.") *See also Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir.), *cert. denied*, 498 U.S. 920 (1990)(reversing order of consolidation on basis that "[c]onsiderations of convenience and economy must yield to a paramount concern for a fair and impartial trial.") Consolidation of these two cases for the limited purpose of discovery will cause no prejudice to any party.

## CONCLUSION

For the reasons set forth above, NASBP's motion to consolidate for purposes of discovery should be allowed.

                                          Respectfully submitted,

                                          */s/ Peter C. Kober*
Paul G. Roche
District of Columbia Bar No. 421471
Litchfield Cavo, LLP
40 Tower Lane
Avon, CT 06001-4222
Voice: 860-255-5577
Fax: 860-255-5566
Email: roche@litchfieldcavo.com

Eileen P. Kavanagh
Email: kavanagh@litchfieldcavo.com
Peter C. Kober
Email: kober@litchfieldcavo.com
Litchfield Cavo, LLP
6 Kimball Lane
Lynnfield, MA 01940
Voice: 781-309-1500
Fax: 781-246-0167
Attorneys for defendant
National Association of
Surety Bond Producers