

# Husch & Eppenberger, LLC
*Attorneys and Counselors at Law*

1200 Main Street, Suite 1700
Kansas City, Missouri 64105
816.421.4800
Fax 816.421.0596
www.husch.com

June 9, 2005

**VIA FAX (202) 659-3732**

Laurence Schor, Esq.
Geoffrey T. Keating, Esq.
McManus, Schor, Asmar & Darden, L.L.P.
1301 Connecticut Avenue, N.W.
Sixth Floor
Washington, D.C. 20036

        Re:    National Association of Surety Bond Producers

Dear Messrs. Schor and Keating:

      This firm represents the National Association of Surety Bond Producers ("NASBP"), which has asked us to respond to your June 6, 2005 demand letter. In that letter, you accused NASBP of libeling your clients in its April/May 2005 *Pipeline* article ("Article") concerning the U.S. Army's release of a Criminal Alert Notice ("CAN") that mentioned your clients. NASBP disputes this accusation and, for the reasons set forth below, rejects your clients' demand for money and a retraction.

### *The Article Contains No Defamatory Statements And Its Contents Are True*

      In your letter, you took the position that NASBP made affirmative statements concerning the involvement of the persons or entities identified in the CAN in illegal activities. To use your words, you stated that the Article took the position that the CAN "establishes that [your] clients . . . have been submitting false payment/performance/bid bonds . . . ." No such allegation or statement is contained anywhere in the Article. The Article simply reports that the CAN was issued by the Army Criminal Investigation Division and states that the CAN concerns the submission of false bonds by certain individuals and entities on government contracts. These statements are 100% true. The CAN specifically alleges that Mr. Hanson, Global Bonding and Millennium Bonding Enterprises were involved in such activities. Contrary to your statements, the Article does not contain a single statement, and certainly does not contain any representation by NASBP, that any of your clients submitted false bonds, nor does the Article state that the CAN "establishes" this fact.

      The Article contains no defamatory statements about your clients, and all of the statements in the Article about what the CAN contains are true. In fact, the Article only mentions one of the several clients identified in your letter, Underwriters Reinsurance Company,

F:\KAN_CITY\ODUMP\LTR\0828101.01

ST. LOUIS • DOWNTOWN ST. LOUIS • KANSAS CITY • JEFFERSON CITY • SPRINGFIELD • PEORIA
CHATTANOOGA • DOWNTOWN MEMPHIS • EAST MEMPHIS • NASHVILLE

**EXHIBIT B**

Husch & Eppenberger, LLC

Laurence Schor
Geoffrey T. Keating
June 9, 2005
Page 2

Ltd. ("URCL"), and only mentions that entity once. The Article's reference to URCL is not defamatory as it simply states that, *according to the CAN,* URCL provided "backing to support the bonds" written by Mr. Hanson. You allege that the Article "maliciously characterizes" the CAN's contents, yet you do not provide any examples of statements from the Article that show this. After multiple, careful readings, I cannot find one statement from the Article that is inaccurate, let alone malicious.

### *The CAN Was Not An Internal Or Secret Government Document*

Given that the Article contains no defamatory statements, it seems that your clients' real complaint is with the CAN itself. You have taken the position that NASBP is responsible for contents of the CAN because it published a document that was, in your words, "intended solely for DoD contracting offices." Your premise – that the CAN was an internal government document – is simply untrue.

NASBP received the CAN from Steve Nelson of SureTec Insurance Company (an NASPB affiliate surety company). Mr. Nelson knew of our interest in the subject and had been contacted by the Texas Department of Insurance for his insights on the subject of individual sureties. Mr. Nelson is a well-respected participant in the surety and construction industries in Texas, who serves as the Executive Vice president and General Counsel to SureTec Insurance Company. He received the document from an individual who, he says, received it from the Small Business Administration ("SBA"). He reports that the e-mail transmitting the CAN was replete with requests, passed on from contracting offer to contracting officer from various government agencies, to alert contracting authorities and contractors alike. He had been advised that the Texas Department of Insurance had sent out a similar notice. Your contention that the CAN was a document internal to the DoD contracting offices is obviously not true in light of the fact that unrelated government agencies, like the SBA, had the CAN and were willing, if not eager, to share it with third parties outside the federal government.

Further, the Department of Defense published the CAN on its Defense Acquisition University website on April 4, 2005 – *51 days prior to NASBP's publication of the CAN in the Pipeline on May 25, 2005.* (A copy of the web page with access to the CAN is enclosed with this letter). The publication of the CAN on an official government website combined with the intentional sharing of the CAN among government agencies outside of the DoD, and with private individuals, makes clear that the CAN was not an internal or secret document.

Husch &
Eppenberger, LLC

Laurence Schor
Geoffrey T. Keating
June 9, 2005
Page 3

### NASBP Had Every Right To Publish And Comment On The CAN

The CAN produced by the Army's Criminal Investigation Division provided notice that there are individuals and entities providing fictitious bonds on government projects. This is certainly a matter of public concern. As such, those reporting on the matter, such as the NASBP, enjoy a qualified privilege in their reports concerning the CAN. Further, most jurisdictions, including Florida (whose laws you contend may apply to this dispute), provide a Fair Reports Privilege that shields an entity from libel liability for commenting on government reports if the report turns out to be false. The purpose of this doctrine is to assure people who report on matters of public concern and on information released by the government that they will not be held responsible for errors in the information used to generate those reports.

Even if the information in the CAN was untrue and defamatory (which you asserted in your letter, but for which you have not provided any support), NASBP was entitled to publish the CAN and an article commenting on it without risk of liability to your clients. This is especially true in light of the fact that, at the time of publication, NASBP had (and still has) no reason to doubt the truth of the information contained in the CAN.

### NASBP's Gesture Of Good Faith

As detailed above, NASBP disputes that it wronged your clients in any way. We will not print a "retraction" of the Article. That said, NASBP appreciates your clients' desire to tell their side of the story, and would like to give its readers the opportunity to see the points you raise. To that end, NASBP will print the following comment in the next issue of the *Pipeline*:

> "In response to the article in the April/May *Pipeline* titled "Army Releases Criminal Alert Notice Regarding Surety Fraud," NASBP was contacted by attorneys representing several entities and individuals named in the Criminal Alert Notice ("CAN") upon which the article was based. These individuals dispute the contents of the CAN and provided the following statement in their letter to NASBP:
>
>> 'The CAN contains numerous and significant errors and unfounded accusations and implications of criminal misconduct by Mr. Edmund C. Scarborough, International Bonding & Construction Services, Inc., Dr. Larry Wright, The Underwriter's Group, Underwriters Reinsurance Company, Ltd., George Gowen and First Mountain Bancorp. The CAN amounts to no more than accusations of

Husch &
Eppenberger, LLC

Laurence Schor
Geoffrey T. Keating
June 9, 2005
Page 4

"guilt by association" based on the fact that two of our clients once proposed to provide and guarantee surety bonds on the same project as Robert Joe Hanson. We are presently in communication with the Army to seek a retraction, and we are examining the legal avenues available to our clients against the Government and the individual Government employees involved. We have already obtained an admission from the person handling this matter on behalf of the Army's Criminal Investigation Division that none of our clients has participated in any criminal activity in connection with government procurement'."

Please feel free to call us to further discuss these issues.

Very truly yours,

Susan M. Greevy  by [initials]

Susan Linden McGreevy
General Counsel
National Association of Surety Bond Producers

Enclosure
cc:   Richard A. Foss, Executive Vice President
      National Association of Surety Bond Producers

F:\KAN_CITY\ODUMP\LTR\0828101.01



# Acquisition Community Connection
Where the AT&L Workforce Meets to Share Knowledge

Defense Acquisi

Home | DAU Resources | Contact Us | Site Map | Help  Search

You are guest (Read) EST

HELP

**EXPLORER**

- Data Management
- DoD Wireless KM CoP
- EVM (Earned Value Management)
- Facilities Engineering
- IT CoP
- Logistics Management
- Mission Support Contracting
- Program Management
- Risk Management
- Systems Engineering
- Find a Member
- Special Interest Areas
- User Info & Training
- Ask-a-Professor
- Glossary
- Contribution Archives

**TOOLS**

- Search Conversations

## US Army Criminal Alert Notice 0006-04-CID274

open references
Viewed 183 times

ID: 70633

US Army Criminal Alert Notice 0006-04-CID274
Date Added: *2005-04-04 9:39 am*
Date Modified: *2005-04-04 9:40 am*

**LOGIN**

Username

Password

Limited access is available for CoPs & SIAs without login

LOGIN
Join

**PARTICIPATE**

E-mail this Page

**PEOPLE**

**Mr. Jeffrey Birch**
(Viewed 547 times)

Editor

Join ACC and...
- Access important Acquisition resources
- Connect with professionals in your field
- Share information and knowledge
- Collaborate in discussion areas
- Create private workspaces

Join Now »



Privacy and Security | Contact Us | Legal Notices

DAU Help Desk
ISSC@dau.mil

https://acc.dau.mil/simplify/ev.php?ID=70633 201&ID2         6/7/2005