UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EDMUND C. SCARBOROUGH,
INTERNATIONAL BONDING &
CONSTRUCTION SERVICES, INC.,
DR. LARRY JAMES WRIGHT,
THE UNDERWRITER'S GROUP,
GEORGE JAMES GOWEN, and
FIRST MOUNTAIN BANCORP,

       Plaintiffs                CASE NUMBER 1:06-cv-00079-RBW

v.

NATIONAL ASSOCIATION OF
SURETY BOND PRODUCERS,

       Defendant

### DEFENDANT'S CONSOLIDATED REPLY TO PLAINTIFFS' OPPOSITIONS TO DEFENDANT'S MOTION TO CONSOLIDATE FOR PURPOSES OF DISCOVERY AND OPPOSITION TO <u>PLAINTIFFS' MOTION FOR RE-TRANSFER</u>

Defendant National Association of Surety Bond Producers ("NASBP") submits this consolidated reply to Privacy Act Plaintiffs' Opposition to Defendant's Motion to Consolidate for Purposes of Discovery ("Privacy Act Plaintiffs' Opposition") and its reply/opposition to Plaintiffs' Memorandum of Law in Opposition to NASBP's Motion to Consolidate Discovery and Plaintiffs' Motion and Incorporated Memorandum of Law to Re-Transfer this Case to the Middle District of Florida ("Plaintiffs' Motion to Re-Transfer"). In the interest of brevity, NASBP hereby incorporates by reference Defendant's Motion to Consolidate for Purposes of Discovery and the Memorandum of Law in Support of Defendant's Motion to Consolidate for Purposes of Discovery.

**ARGUMENT**

**I.    CONSOLIDATION IS APPROPRIATE**

The thrust of plaintiffs' position with respect to consolidation is that consolidation is unnecessary and/or inappropriate because the *NASBP* Case and the *Department of Defense* Case involve "different" parties and "different" issues. Plaintiffs would have the Court believe that because the three corporate plaintiffs involved in the *NASBP* Case, *i.e.*, IBCS, UG and FMB, are not parties to the *Department of Defense* Case, the interests which those three corporate plaintiffs seek to protect in the *NASBP* Case are unrelated to and/or unaffected by what transpires in the *Department of Defense* Case, such that the paths of discovery in the two cases will diverge, not converge. This contention is sheer sophistry.

Plaintiffs Scarborough, Wright and Gowen (collectively, the "Privacy Act Plaintiffs") are the chief executive officers of IBCS, UG and FMB, respectively. Indeed, Scarborough, Wright and Gowen respectively *control* IBCS, UG and FMB, all of which are privately-held corporations.[1] Moreover, plaintiffs in *both* cases seek the identical amount of $45 million in damages, which hardly seems coincidental. Indeed, one must speculate what "damages" IBCS, UG and FMB could have separately suffered as a result of NASBP's conduct, given that Scarborough, Wright and Gowen presumably suffered the same amount of "damages", *i.e.*, $45 million, as a result of the government's conduct and NASBP's conduct.

Plaintiffs also unsuccessfully attempt to circumnavigate the fact that a central issue to both cases is whether the statements contained in the CAN are true. *See* Privacy Act, 5 U.S.C. § 552a (g)(1). In this context, plaintiffs' contention that their claims against NASBP are centered

---

[1] Copies of the annual reports of IBCS, UG and FMB are attached hereto. The annual report of ICBS discloses not only that Scarborough is the chief executive officer and a director of ICBS, but also that "Yvonne Scarborough" – apparently, Scarborough's wife – is the Secretary/Treasurer and a director of ICBS. The UG and FMB annual reports disclose that Wright and Gowen are the *only* officers and directors of UG and FMB.

2

on NASBP's "independent commentary" on its website regarding the CAN, *i.e.*, that they are *not* seeking recovery against NASBP for the statements in the CAN itself and that the truth or falsity of the statements in the CAN is irrelevant to their claims against NASBP, *see* Privacy Act Plaintiffs' Opposition, p. 2, and Plaintiffs' Motion to Re-Transfer, p. 5, is nonsensical to the point of disingenuousness. The "independent commentary" that accompanied the CAN in the subject issue of NASBP's *Pipeline* did not identify plaintiffs by name or accuse plaintiffs of any acts of wrongdoing – or even state that plaintiffs had been accused of any acts of wrongdoing – nor did it "expose private facts" about plaintiffs. Indeed, given the innocuous language contained in NASBP's "independent commentary",[2] it is wholly unclear what it is that NASBP "independently" stated that plaintiffs contend gave rise to their claims.

The Complaint in the *NASBP* Case specifically alleges, *inter alia*, that, "*the CAN was incorporated into, and was a part of*, the *Pipeline* Article." *See* Complaint, ¶18. (Emphasis supplied.) Thus, plaintiffs themselves allege that NASBP's "independent commentary" cannot be considered separately from the statements contained in the CAN. The Complaint further alleges that:

> …
>
> 25. The *Pipeline* Article, *including the* Summary and *linked/attached CAN*, as set forth above and published by NASBP to its members and other non-members, was understood by such persons to mean that Plaintiffs, in their business capacity as individual sureties and related businesses: are associates of and/or acting in

---

[2] "NASBP recently received a Criminal Alert Notice (CAN) from Special Agent Chris C. Hamblen with the Army Criminal Investigation Command (CID) out of Phoenix, AZ regarding individuals or entities submitting false payment/performance /bid bonds on numerous DOD contracts throughout the United States. This CAN has already been forwarded to all government law enforcement offices and DOD contracting offices.

"According to the notice, Robert Joe Hanson is being accused of submitting fictitious bonds, on numerous US Government contracts, with the US Army Corps of Engineers (USACOE) and the Fish and Wildlife Service (USFWS), using Millennium Bonding Enterprises, Global Bonding and Enterprises, and/or Individual Surety Ltd. On a majority of these bonds, Hanson used Underwriters Reinsurance Company, Ltd. (URCL) as the backing to support the bonds. The complete information can be found in the attached <u>criminal alert notice</u> from the Department of Army's Criminal Investigation Division."

>concert with Robert Joe Hanson, a person alleged to have committed illegal acts and to be under investigation by numerous jurisdictions; inappropriately and illegally issued false or fictitious bonds to the Federal Government and/or provided "backing" to support such false or fictitious bonds; are the subject of the CAN under investigation by the U.S. Army and numerous other jurisdictions; have been reported as criminals to, and are wanted by, *all* government law enforcement offices in the United States; have been reported to all United States Department of Defense (DOD) contracting offices which issue contracts on for which Plaintiffs provide individual surety bonds and related services.
>
>26.     *The statements* were false and defamatory and were published maliciously and/or with knowledge of or reckless disregard for their falsity, and as a direct and proximate result Plaintiffs' professional and business reputations have been greatly injured.  …
>
>     …
>
>37.     Regardless of NASBP's knowledge of the falsity of the *Pipeline* Article or reckless disregard for the truth of its contents, the *Pipeline* Article, *including* Summary and *linked/attached CAN*, as set forth above and published by NASBP to its members and other non-members, was published with knowledge of the effects it would have and the false light in which Plaintiffs would be case, or in reckless disregard of such effects and false light.
>
>38.     The *Pipeline* Article, *including the* Summary and *linked/attached CAN*, as set forth above and published by NASBP to its members and other non-members, personally violated Plaintiffs' right of privacy and held up information about Plaintiffs to public gaze by exposing private facts about Plaintiffs to the public and casting Plaintiffs in a false light.
>
>     …

*Id.* (Emphasis supplied.)

Furthermore, notwithstanding plaintiffs' contention that no discovery of government personnel or documents is necessary, *see* Privacy Act Plaintiffs' Opposition, pp. 8-10, such discovery is clearly relevant.  Plaintiffs misconstrue NASBP's purpose in obtaining discovery relating to the origin of the CAN; although NASBP has an interest in determining whether, subsequent to NASBP placing the *Pipeline* Article and the CAN on its website, the government has engaged in any investigations of plaintiffs – such information being relevant to plaintiffs'

claims for damages – NASBP has a greater interest in obtaining discovery from the government for the purpose of determining whether, at the time NASBP disseminated the *Pipeline* Article and the CAN, the government was (as the CAN states) involved in investigating plaintiffs.

Furthermore, because NASBP has alleged as affirmative defenses, *inter alia*, that the CAN was already in the public domain, discovery from the government is not only appropriate but necessary to proof of these defenses. Prior to its dissemination on NASBP's website, the CAN passed through the hands of several individuals, some of whom were employees or agents of the government and some of whom were not, such that the extent of this dissemination prior to the appearance of the CAN on the NASBP website is clearly relevant to how "public" it had become. Similarly, because NASBP has alleged that the CAN was related to a matter of public interest, *i.e.*, fraud in the sale of surety bonds for government contracts, discovery from the government is relevant to establishing the "public interest" underlying the CAN. Finally, because the Privacy Act Plaintiffs have alleged in the *Department of Defense* Case that government agents or employees disseminated the CAN outside the government *subsequent* to NASBP's dissemination of the *Pipeline* Article and the CAN, discovery of those government agents has clear relevance to plaintiffs' alleged damages in both cases. Plaintiffs, apparently laboring under the misconception that NASBP has no defenses to their claims, blithely ignore that, having asserted them, NASBP is entitled to conduct discovery designed to prove those defenses.

Finally, it is worthwhile to note that, although plaintiffs have represented that the government intends to assert certain positions with respect to any deposition or document discovery, *see* Privacy Act Plaintiffs' Opposition, p. 12, the government has filed no opposition to NASBP's motion to consolidate. The Court should not infer from the government's silence

that the process of obtaining discovery in the *NASBP* Case will be unduly burdensome, nor should it decline to order consolidation on the basis of plaintiffs' unverified representations.

### II. THE *NASBP* CASE SHOULD NOT BE RE-TRANSFERRED AT THIS TIME

Plaintiffs argue that, because NASBP is presently seeking to consolidate the *NASBP* Case and the *Department of Defense* Case only for purposes of discovery, the Court should order the immediate re-transfer of the *NASBP* Case. Without making reference to the general principle that motions for re-transfer are generally looked upon with disfavor and that a transferee court should not make an independent determination with respect to the propriety of an order transferring a case, *Russell* v. *IU International Corp.*, 685 F.Supp. 172, 175 (N.D.Ill. 1988), plaintiffs assert that re-transfer is appropriate here "because the circumstances that previously supported transfer have changed." Plaintiffs' Motion to Re-Transfer, p. 10. Plaintiffs' argument is without foundation.

There has been *no* substantive "change" in circumstances. As plaintiffs themselves observe, the District Court for the Middle District of Florida (the "District Court in Florida") clearly contemplated the possibility that the *NASBP* Case might be re-transferred to the District Court in Florida at some future date, *i.e.*, for dispositive motions or for trial. That option remains open. However, because consolidation of the two cases for purposes of discovery would further the ends of judicial convenience and convenience to the parties, re-transfer *at this time* would not be appropriate. Despite plaintiffs' entreaties to the contrary, it makes no sense for two courts to oversee discovery in two cases that involve similar parties and similar issues, *i.e.*, to encourage wasteful duplicative discovery and invite inconsistent results with respect to the resolution of similar discovery disputes. Once discovery is complete, then this Court could still consider whether, on balance, re-transfer to the District Court of Florida would be necessary/appropriate.

Plaintiffs also contend that this Court should order re-transfer, in part, because the District Court in Florida is "intimately familiar" with the issues in the *NASBP* Case. This contention lacks substance, inasmuch as the District Court in Florida's "intimate familiarity" is limited to briefs filed by the parties with respect to NASBP's motion to dismiss and NASBP's motion for transfer. At this state in the proceedings, *i.e.*, following the filing of briefs relating to plaintiffs' motion to seal the CAN and NASBP's motion for consolidation, this Court has no less knowledge of the relevant issues than did the District Court in Florida prior to transfer.

Plaintiffs further asset that NASBP "misrepresented" its purpose in seeking a transfer of the *NASBP* Case to this Court pursuant to 28 U.S.C. §1404, *i.e.*, that NASBP did not disclose that it sought transfer for the limited purpose of discovery. NASBP made no such "misrepresentation"; at the time it sought transfer, NASBP contemplated the likely possibility of consolidation for all purposes. It was only after transfer had already taken place that NASBP understood that the government would likely decline to agree to a single trial for both cases, at which point consolidation for the more limited purpose of discovery became the most viable alternative. In any event, however, NASBP's original motion clearly disclosed that a significant reason for that motion was NASBP's interest in simplifying the process of obtaining discovery from the government, and that transfer was a necessary first step toward that goal.

Plaintiffs' contention that NASBP was required to move for transfer pursuant to 28 U.S.C. §1407, rather than pursuant to 28 U.S.C. §1404, is equally unavailing. The language of the statute is permissive, *i.e.*, there is no requirement that *all* transfers of cases for purposes of discovery be made by the judicial panel on multidistrict litigation. Indeed, the notion that this statute provides the exclusive procedural mechanism for transfer of a case, in the context of coordinating discovery in only *two* pending cases, is ludicrous.

Moreover, the suggestion that NASBP's tactics were "unfair" and that plaintiffs and the government were "deprived" of an opportunity to be heard defies credulity. Plaintiffs vigorously opposed transfer in the District Court in Florida and now oppose consolidation in this Court with equal vigor, while the government – whose witnesses and documents stand to be most significantly impacted by an order of consolidation – has chosen to stand mute in response to NASBP's motion. Plaintiffs do not state what *additional* "proof" they purportedly would have presented at an "evidentiary hearing" before the judicial panel that they were unable to present to either the District Court in Florida or to this Court; the government, meanwhile, apparently stands indifferent.

Finally, plaintiffs' prediction of dire consequences associated with permitting transfer of the *NASBP* Case and its consolidation with the *Department of Defense* Case – *i.e.*, that it will "open the floodgates for parties who seek to avoid the procedural requirements and substantive rights Section 1407 affords litigants[,]" *see* Plaintiffs' Motion to Re-Transfer, p. 13 – is improbable. The transfer of a case under 28 U.S.C. §1404 for the purpose of consolidation to facilitate coordination of discovery with another case is neither a radical application of that statute nor one that will change the standards applicable to transfers under 28 U.S.C. §1407.

## CONCLUSION

For the reasons set forth above and in NASBP's previous filings, NASBP's motion to consolidate for purposes of discovery should be allowed, and plaintiffs' motion for re-transfer should be denied.

Respectfully submitted,

_____/s/_____
Paul G. Roche
District of Columbia Bar No. 421471
Litchfield Cavo, LLP
40 Tower Lane
Avon, CT 06001-4222
Voice: 860-255-5577
Fax: 860-255-5566
Email: roche@litchfieldcavo.com

Eileen P. Kavanagh
Email: kavanagh@litchfieldcavo.com
Peter C. Kober
Email: kober@litchfieldcavo.com
Litchfield Cavo, LLP
6 Kimball Lane
Lynnfield, MA 01940
Voice: 781-309-1500
Fax: 781-246-0167
Attorneys for defendant
National Association of
Surety Bond Producers