

NOVEMBER 2006

# Construction

EXECUTIVE

# SURETY BONDING

EXHIBIT B

# TABLE OF CONTENTS

EDITOR-IN-CHIEF
Lisa A. Nardone

ASSISTANT EDITOR
Lauren Pinch

STAFF WRITER
Joanna Masterson

CONTRIBUTING EDITORS
Marla McIntyre
*Surety Information Office*

Marc Ramsey
*Surety Information Office*

DESIGN AND PRODUCTION
The Magazine Group

ADVERTISING INFORMATION
Donald R. Berry,
National Sales Manager, (908) 852-7466
dberry@constructionexec.com

Stephen B. Donohue,
Regional Sales Manager, (609) 654-4568
sdonohue@constructionexec.com

Surety Bonding November 2006, a special section of *Construction Executive*, is published by Associated Builders and Contractors Service Corp. © Copyright 2006. All rights reserved.

S4   **2006 Surety Market Overview**
     *Surety Industry Embraces 21st Century Construction Boom*

S10  **Executive Insights**
     *Surety Industry Leaders Offer Views, Expertise*

S18  **Is Your Construction Company Bond-Worthy?**
     *How to Obtain, Keep and Expand Your Company's Surety Bond Capacity*

S20  **The Surety Relationship**

S22  **Why Are Financials So Important to Your Surety?**

S26  **How a Good Construction CPA Can Help Contractors Obtain More Surety Credit**

S30  **Safety Performance Affects Contractors' Ability to Obtain a Bond**

S34  **Bonding Private Projects Opens Doors,**
     *Contractors Can Acquire More Work, Generate More Revenue*

S38  **Avoiding the Big 'D'**
     *Preventing Default Starts Early*

S42  **Why Contractors Fail**

S44  **Electronic Surety Bonds Improve Costs, Efficiency**

S46  **Bonding for Small and Emerging Contractors**
     *What Works and What Doesn't?*

S48  **Cultivating Emerging Contractors**

S50  **Surety Information Office** *The Information Resource on Contract Surety Bonds*

S52  **Necessities for Every Contractor's Toolbox**
     *SIO Resources Help You Build Your Business*

# BONDING FOR SMALL AND EMERGING CONTRACTORS

## WHAT WORKS AND WHAT DOESN'T?

BY LENORE MAREMA

onding for small and emerging contractors was a key issue in the 2006 state legislative sessions, and in several different contexts. Some states sought to increase the state bond threshold under the theory that small and emerging contractors could do bigger jobs for the state without bonding and grow their businesses.

In Indiana, a $500,000 bond threshold in Senate Bill 360 was defeated. The Utah Administrative Services Office considered, but decided against, increasing the state bond threshold from $50,000 to $100,000. State bond threshold legislation also failed to pass in 2006 in Iowa, Kansas, Missouri and Washington.

In Virginia, however, House Bill 64 raised the bond threshold from $100,000 to $250,000 for state Department of Transportation projects. As originally drafted, the bill would have increased the state threshold to $500,000 for all public projects.

This issue also arose in legislation to permit individual sureties to write bonds. The thinking was that if insurance companies did not bond small and emerging contractors, these contractors should have the option of individual backing. Individual sureties claim to pledge assets to the state to back the bonds they issue. State procurement officers have the substantial burden of determining the authenticity of the documentation of the assets pledged and verifying that pledged assets actually exist and are sufficient.

Maryland enacted House Bill 169, which now allows individual sureties to write surety bonds without being licensed as a surety or subject to regulation by any state agency. The Louisiana Senate passed Resolution 158, which calls for a study of the feasibility of permitting individual sureties to provide surety bonds on public works projects, with the possibility of legislation there in 2007. In North Carolina, House Bill 1723, which was enacted, contains a list of the items the state legislative research council is permitted to study.

Recently, small and minority contractors expressed concern about the home services contractors bonding bill (AB-

3048) still pending in the New Jersey legislature.

### WHY DOESN'T THIS LEGISLATION WORK?
This type of legislation does not help small and emerging contractors because it is not aimed at them. Raising the state bond thresholds does not guarantee small and emerging contractors will get any or all of the state projects under the higher threshold, and permitting individual sureties to issue bonds does not mean they will focus their efforts on these contractors.

Even more important is whom this legislation harms. Laborers, subcontractors and suppliers on public projects must rely on a general contractor's payment bond for protection because they cannot assert mechanics liens against public property. If no payment bond is required, these parties are left with no means to collect for their services and supplies if the contractor is unable or unwilling to pay them. Small and emerging contractors are more likely to start their businesses as subcontractors, so when state bond thresholds are raised, the most vulnerable companies are deprived of payment protection.

Increasing the bond threshold may mean that all contractors will be able to bid on bigger projects without providing payment bond protection, and these may include financially unstable contractors from other states that cannot get bonded.

Similarly, if individual sureties pledge assets that don't exist, are difficult to verify or are not readily convertible into cash, everyone on the project is left unprotected. Significant abuses and fraud occurred in the past when individual sureties were permitted to issue bonds.

If individual sureties can write bonds in unlimited amounts, they could be the surety on multiple large state contracts. If the assets pledged to support the bonds are uncollectible, any or all of the contractors bonded could default and go into bankruptcy, and the public owners would be left with huge unfunded expenses to complete the construction projects.

### WHAT DOES WORK?
Bonding requirements exist to provide vital safeguards for those who work on public projects and the taxpayers who pay for them. Programs currently are in place to assist small and emerging contractors in obtaining surety bonds. The Surety Bond Guarantee Program of the U.S. Small Business Administration is one example.

Members of The Surety & Fidelity Association of America (SFAA) and National Association of Surety Bond Producers are committed to making surety bonds available and accessible to all qualified contractors. They also are committed to increasing the number of small, minority and women-owned contractors that are bondable. SFAA has developed a Model Contractor Development Program to assist the local surety associations and their respective contractor communities in furthering these goals.

The relationship between a surety and its client is one of mutual help. The surety wants the contractor to succeed and grow, and the surety prospers only when the contractor succeeds.

**Marema is vice president of government affairs for SFAA, Washington, D.C. For more information, call (202) 778-3637 or email lmarema@surety.org.**



Sky Insurance
an affiliate of Sky Financial Group

People look *up* to our name!

Call us to see how our team of professionals can help you.
Southpointe  555 Southpointe Boulevard, Suite 200, Canonsburg, PA 15317  724-271-3100
Cranberry  500 Cranberry Woods Drive, Suite 100, Cranberry Twp., PA 16066  724-741-2800



FOCUSED ON YOUR SUCCESS.

At Chilton & Medley, we focus on your success by helping you turn financial and business challenges into opportunities with our experience, commitment, flexibility and responsiveness.

Call us today, **502.587.1719** or toll free **888-587-1719**.

CHILTON & MEDLEY
CERTIFIED PUBLIC ACCOUNTANTS