# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| EDMUND C. SCARBOROUGH, <u>et</u> <u>al.</u>, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )     Civil Action No. 06-79 (RBW) |
| | ) |
| NATIONAL ASSOCIATION OF | ) |
| SURETY BOND PRODUCERS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

_____


## MEMORANDUM OPINION

Edmund Scarborough, Dr. Larry Wright, George Gowen, and three corporations

(collectively "the plaintiffs" or "the NASBP plaintiffs") bring this action against the National

Association of Surety Bond Producers ("NASBP" or "the defendant"), alleging common-law

claims of libel, invasion of privacy, and interference with contractual and business relations in

connection with the NASBP's Spring 2005 publication of an article concerning a Criminal Alert

Notice ("CAN") issued by the Department of the Army, which purportedly falsely implicated the

plaintiffs in surety fraud.[1]  Complaint ("Compl.") ¶¶ 23-48.  On January 13, 2006, this case

("NASBP Case") was transferred to this judicial district from the United States District Court for

_____

[1]  The three corporate plaintiffs named in the complaint are International Bonding & Construction Services, Inc. ("IBCS"), The Underwriter's Group ("UG"), and First Mountain Bancorp ("FMB").  Complaint ("Compl.") at 1.  According to the complaint, "IBCS is a Florida corporation . . . engaged in the business of providing a variety of bonding and construction administration/consulting services to Scarborough . . . and other individuals and entities." Compl. ¶ 2.  In addition, "UG is a Florida corporation . . . engaged in the business of risk underwriting for business, construction, and financial guarantees[,] . . . [and] FMB is a Nevada corporation . . . engaged in the business [of] establishing escrow and other asset holding accounts at financial institutions and serving as [t]rustee for investor [t]rusts."  <u>Id.</u> ¶¶ 4, 6.

the Middle District of Florida for possible consolidation with the plaintiffs' related Privacy Act

action against three federal agencies, including the United States Department of Defense

("DOD").[2]  Transfer Order at 2, <u>Scarborough v. NASBP</u>, Civ. No. 06-79 (RBW) (D.D.C. Jan. 13,

2006) (transferring case and stating that this Court "will determine if the cases are appropriate for

consolidation, or if this case should eventually be returned to the Middle District of Florida for

dispositive motions or trial"); <u>see also</u> <u>Scarborough v. Harvey</u>, Civ. No. 05-1427 (RBW)

("Privacy Act Case").  Currently before the Court is the Defendant's Motion to Consolidate for

Purposes of Discovery pursuant to Federal Rule of Civil Procedure 42(a) ("Def.'s Mot.") and the

Plaintiffs' Motion to Re-Transfer Case to the Middle District of Florida ("Pl.'s Mot.").[3]  For the

reasons set forth below, the Court will deny the defendant's motion to consolidate and grant the

plaintiffs' motion to re-transfer the case to the United States District Court for the Middle

District of Florida.[4]

---

[2]  Scarborough, Wright, and Gowen—but not ICBS, UG, and FMB—are named as plaintiffs in the Privacy Act case ("Privacy Act plaintiffs").  In addition, the individual plaintiffs are all apparently affiliated with the corporate plaintiffs in some capacity.  <u>See</u> Privacy Act Complaint ¶¶ 1 (stating that Scarborough "serves as Co-Chief Executive Officer of [ICBS]"), 2 (stating that Wright serves as the President of UG), 3 (stating that Gowen serves as the President of FMB).  Although there is consequently an obvious and substantial overlap between the NASBP plaintiffs and the Privacy Act plaintiffs, the Court will differentiate between the two groups where appropriate in order to clearly set forth the relevant details of both actions.

[3]  The following papers have been submitted to the Court in connection with these motions: (1) Defendant's Motion to Consolidate for Purposes of Discovery ("Def.'s Mot."); (2) Memorandum of Law in Support of Defendant's Motion to Consolidate for Purposes of Discovery ("Def.'s Mem.); (3) Plaintiffs' Memorandum of Law in Opposition to NASBP's Motion to Consolidate Discovery and Plaintiff's Motion and Incorporated Memorandum of Law to Re-Transfer This Case to the Middle District of Florida ("Pls.' Mem."); (4) Privacy Act Plaintiffs' Opposition to Defendant's Motion to Consolidate for the Purposes of Discovery ("Privacy Act Pls.' Opp."); (5) Defendant's Consolidated Reply to Plaintiffs' Oppositions to Defendant's Motion to Consolidate for Purposes of Discovery and Opposition to Plaintiffs' Motion for Retransfer ("Def.'s Opp."); and (6) Plaintiffs' Reply to NASBP's Opposition to Re-Transfer to the Middle District of Florida ("Pls.' Reply").

[4]  In addition, the plaintiffs filed a motion to seal the defendant's motion to consolidate, which the defendant opposed.  Motion to Seal Defendant's Motion to Consolidate for Purposes of Discovery and Supporting Memorandum ("Mot. to Seal"); Defendant's Opposition to Plaintiffs' Motion to Seal Defendant's Motion to Consolidate for Purposes of Discovery and Supporting Memorandum ("Def.'s Opp. to Mot. to Seal"); Plaintiffs'

(continued...)

# I. Factual Background

In or around March 2005, Special Agent Christopher Hamblen of the Department of the Army's Criminal Investigation Division created Criminal Alert Notice No. 0006-04-CID274 in connection with his investigation into the allegedly fraudulent issuance of individual surety bonds to the United States government.[5]  Privacy Act Complaint ¶¶ 12-15.  The Privacy Act plaintiffs allege that this CAN implicates them in "fraudulent and criminal activities" and contains "personal and confidential information about [them] including, but not limited to, [their] name[s], financial history, associations, entrepreneurial activities, business interests[,] and business addresses."  Id. ¶¶ 28, 30-32.  The Privacy Act plaintiffs further allege that "[m]uch of the information about [them] in . . . [the] CAN is inaccurate, misleading, or false."  Id. ¶ 33.

---

[4](...continued)
Reply to the Opposition of National Association ("Pls.' Reply to Mot. to Seal").  Specifically, the plaintiffs request that the Court seal the copy of the CAN that was attached as an exhibit to the defendant's motion to consolidate, arguing that it contains sensitive information that was not intended to be publicly available and noting that information contained in the CAN was filed under seal by consent of the government in the plaintiffs' related Privacy Act Case.  Mot. to Seal at 2; see March 3, 2006 Minute Order, Scarborough v. Harvey, Civ. No. 05-1427 (RBW) (granting consent motion for leave to file the defendants' motion to dismiss or for partial summary judgment under seal).  In response, the defendant argues generally that sealing the CAN is unwarranted because the plaintiffs have not demonstrated a compelling interest sufficient to outweigh the "strong presumption in favor of public access to judicial proceedings."  Def.'s Opp. to Mot. to Seal at 7 (internal citation and quotation marks omitted) (also arguing that the factors enumerated in Johnson v. Greater Southeast Cmty. Hosp. Corp., 951 F.2d 1268 (D.C. Cir. 1991), suggest that the CAN should not be sealed).  The defendant further contends that the plaintiffs' motion to seal should be denied because the United States District Court for the Middle District of Florida "denied [the] plaintiffs' motion for . . . identical relief on October 31, 2005[,] and [the] plaintiffs have offered no adequate basis for having this Court 'reconsider' that earlier order."  Id. at 1-2.  Because both this case and the Privacy Act Case involve an alleged invasion of the plaintiffs' privacy through the disclosure of purportedly sensitive information contained in the CAN, the Court concludes that the potential prejudice suffered by the plaintiffs by the public availability of the CAN during the pendency of this litigation outweighs whatever generalized public interest there may be for access to the CAN.  Moreover, as the plaintiffs observe, the defendant does not "identify any prejudice it [might] suffer if the CAN were sealed."  Pls.' Reply to Mot. to Seal at 6.  Finally, because the Court has already granted a motion to seal the CAN in the Privacy Act Case, to deny the plaintiffs' motion here would lead to inconsistent results with respect to the same document in related cases and would frustrate the privacy interest asserted by the Privacy Act Plaintiffs. See id. at 4.  Accordingly, the Court will grant the plaintiffs' motion to seal the CAN, which is attached to the defendant's motion to consolidate as Exhibit 2.

[5]  The CAN is subtitled, "Insurance Fraud – Bonding and Surety."  Compl. ¶ 20.

3

Finally, the plaintiffs allege that "[t]he CAN is conspicuously marked 'FOR OFFICIAL USE ONLY' at the top and bottom of each page."[6]  Compl. ¶ 21; see also Privacy Act Compl. ¶ 26.

Following its creation, the CAN was purportedly disseminated by e-mail to contracting offices within the Department of Defense ("DOD"), personnel within the Small Business Administration, and "private contractors, [the] [p]laintiffs' competitors, and other unauthorized persons."[7]  Id. ¶ 66; see id. ¶¶ 37-67 (recounting all of the alleged disclosures of the CAN).  Also among the entities to which the CAN was allegedly disclosed was defendant NASBP, "an international organization of professional surety bond producers and brokers representing over 5,000 persons."  Id. ¶ 37;  see id. ¶¶ 37-40 (recounting the alleged disclosure to the NASBP).[8]  As part of its business activities, the NASBP publishes Pipeline, a periodic newsletter available in both hard copy and electronic form.[9]  Compl. ¶ 7.

---

[6]  According to the Privacy Act plaintiffs, Department of the Army regulations state that "the 'For Official Use Only' . . . designation is reserved for information that has not been given a security classification but which may be withheld from the public because disclosure would cause a foreseeable harm to an interest protected by one or more Freedom of Information Act . . . exemption[]."  Privacy Act Compl. ¶ 25.

[7] In addition, the Privacy Act plaintiffs allege that the DOD improperly disclosed the CAN by publishing it on the public website of the Defense Acquisition University ("DAU"), where it was "accessed and viewed over 150 times by [I]nternet users."  Privacy Act Compl. ¶ 57; see id. ¶¶ 55-59.  The Privacy Act plaintiffs state that the CAN was quickly removed from the publicly available area of the DAU website once the plaintiffs notified the DAU regarding the document's allegedly unauthorized disclosure.  Id. ¶ 59.

[8]  The Privacy Act Complaint alleges that Special Agent Hamblen disseminated the CAN to defendant NASBP.  Id. ¶ 37.  By contrast, the complaint filed in the NASBP Case does not specify whether, and by what method, the CAN was disclosed to the NASBP, except to note that the NASBP newsletter article at issue in this case stated that "NASBP recently received a Criminal Alert Notice (CAN) from Special Agent Chris C. Hamblen with the Army Criminal Investigation Command. . . .  This CAN has already been forwarded to all government law enforcement offices and DOD contracting offices."  Compl. ¶ 17.

[9]  The electronic version of Pipeline is available to NASBP members through a password-protected section of the NASBP's website at www.nasbp.org.  Compl. ¶¶ 7, 11; see also Privacy Act Compl. ¶ 39.  The plaintiffs allege that the hard copy version of the newsletter is transmitted "to all of [the NASBP's] members as well as other individuals and/or entities not its members."  Compl. ¶ 11.

4

Sometime in April or May 2005, the NASBP published the April/May 2005 issue of the Pipeline newsletter, which contained an article concerning the CAN ("Pipeline Article"), a summary of the article, entitled "Army Releases Criminal Alert Notice," and a full copy of the CAN's text.  Compl. ¶¶ 13-19; Privacy Act Compl. ¶¶ 38-40.  The summary of the Pipeline Article directed readers to the location of the article's full version, which in turn referred them to a copy of the text of the CAN in both the electronic and hard copy versions of the newsletter. Compl. ¶¶ 14-19.  The summary and the Pipeline Article each stated that "[the] NASBP recently received a Criminal Alert Notice (CAN) from . . . the Army Criminal Investigation Command (CID) out of Phoenix, AZ, regarding individuals or entities submitting false payment/performance/bid bonds on numerous DOD contracts throughout the United States."  Id. ¶¶ 14, 17.  The plaintiffs allege that this statement "was drafted solely by [the] NASBP and accuses the named [p]laintiffs [in the NASBP Case] of committing criminal acts."  Id. ¶ 17.  The plaintiffs further allege that the publication and dissemination of the Pipeline Article by the NASBP, "including the Summary and linked/attached CAN," caused those who read the article to falsely believe that the plaintiffs were, inter alia, under investigation by the federal government for the issuance of fraudulent surety bonds.  Id. ¶ 25.

On July 20, 2005, the Privacy Act plaintiffs filed a sixteen-count action in the United States District Court for the District of Columbia against the Department of the Army, the DOD, and the Small Business Administration ("Privacy Act defendants"), alleging that the defendants' disclosure and dissemination of confidential and sensitive information concerning the plaintiffs in connection with Special Agent Hamblen's investigation and the subsequent issuance of the CAN—including the disclosure of the CAN to the NASBP—had violated various provisions of

the Privacy Act, 5 U.S.C. § 552a et seq. (2000).[10]  Privacy Act Compl. ¶¶ 87-213 (detailing the

alleged Privacy Act violations); see also id. ¶¶ 87-98 (alleging that the Department of the Army

violated the Privacy Act by disclosing the CAN to the NASBP).

       On August 19, 2005, the plaintiffs filed this current action in the United States District

Court for the Middle District of Florida against the NASBP,[11] raising three common-law claims

and alleging (1) that the statements made in the Pipeline Article concerning the CAN "were false

and defamatory and were published maliciously and/or with knowledge of or reckless disregard

for their falsity," Compl. ¶ 26; (2) that the Pipeline Article "was published with knowledge of the

effects it would have and the false light in which [the] [p]laintiffs would be cast, or in reckless

disregard of such effects and false light," and that it "personally violated [the] [p]laintiffs' right

of privacy and held up information about [the] [p]laintiffs to public gaze by exposing private

facts about [the] [p]laintiffs to the public and casting [the] [p]laintiffs in a false light," id. ¶¶ 37-

38; and (3) that "[b]y intentionally and maliciously publishing false and defamatory statements

about [the] [p]laintiffs, and in publishing statements that cast [the] [p]laintiffs in a false light and

held them up to public gaze, [the] NASBP has intentionally . . . interfered with [the] [p]laintiffs'

existing and prospective contractual and business relations with [various entities]," id. ¶ 46.

       On November 17, 2005, the NASBP moved to transfer this case from the Middle District

of Florida to this Court for consolidation with the Privacy Act Case for all purposes, including

trial, pursuant to 28 U.S.C. § 1404(a) (2000).  Specifically, the NASBP's motion stated that:

---

[10]  The Privacy Act defendants have filed a dispositive motion in that case, which is currently pending resolution.  No discovery has yet been conducted.

[11]  Plaintiffs Scarborough and Wright are Florida residents, while plaintiff Gowen resides in Utah.  Compl. ¶¶ 1, 3, 5.  In addition, as previously mentioned, plaintiffs ICBS and UG are Florida corporations, and plaintiff FMB is incorporated in Nevada.  Id. ¶¶ 2, 4, 6.

6

> [U]pon transfer, [the NASBP] intends to seek consolidation of the NASBP Case [and the Privacy Act Case]. . . . [N]otwithstanding that these two cases involve different defendants and different theories of liability, consolidation pursuant to [Rule 42(a)] is necessary and appropriate, and transfer of the NASBP Case is an indispensable first step toward such consolidation.

Defendant's Motion to Transfer for Purpose of Consolidation, Scarborough, et al. v. Nat'l Ass'n of Surety Bond Producers, Civ. No. 05-1544 (TBM) (M. D. Fla. Nov. 17, 2005); see also Pls.' Mem. at 12; Def.'s Opp. at 7 (conceding that "at the time it sought transfer, [the] NASBP contemplated the likely possibility of consolidation for all purposes").  The Middle District of Florida granted the defendant's motion on December 27, 2005, finding that the NASBP Case "involves questions of law or fact common to those in [the Privacy Act Case]" and transferring the NASBP Case to this Court "for all further proceedings."  Transfer Order at 1-2.  In doing so, the Florida district court stated that this Court would "determine if the cases are appropriate for consolidation, or if this case should eventually be returned to the Middle District of Florida for dispositive motions or trial."  Id. at 2.

In March 2006, the defendant moved to consolidate this case with the Privacy Act Case "for purposes of discovery only," arguing that the consolidation for discovery and document production "is a necessary and appropriate means for this Court to avoid unnecessary costs and delay," to promote interests of judicial economy and efficiency, and to streamline duplicative depositions and discovery requests.[12]  Def.'s Mot. at 8; see generally id. at 4-8.  Contrary to its

---

[12]  Specifically, The NASBP argues that "the nexus of both [the Privacy Act Case and the NASBP Case] is the allegedly unauthorized, unprivileged[,] and/or unjustified dissemination of information relating to [the] plaintiffs that was contained in the CAN."  Def.'s Mot. at 4.  As affirmative defenses to the plaintiffs' common-law claims, the defendant further contends that "its dissemination of the CAN and an accompanying article was privileged . . .[,] that the subject matter of the CAN was a topic of public concern, and that such dissemination occurred only after government employees or agents had already communicated the CAN to [other] third persons . . . outside the government."  Id. (emphasis in original).  Consequently, it claims that "[t]he allegations in the two cases are . . .

(continued...)

7

representation before the Middle District of Florida, the defendant now "does not seek

consolidation of the two cases for trial."  Id. at 8; see Def.'s Mem. at 9 (stating that "[the]

NASBP proposes consolidation only for the limited purpose of discovery . . . such that the two

cases would still be tried separately"); see also Def.'s Opp. at 7 (explaining that "[i]t was only

after transfer had already taken place that [the] NASBP understood that the government would

likely decline to agree to a single trial for both cases, at which point consolidation for the more

limited purpose of discovery became the most viable alternative").  Finally, the defendant asserts

that the requested consolidation for discovery "will not unfairly prejudice any party."  Def.'s

Mot. at 4; see also Def.'s Mem. at 9.

        The NASBP plaintiffs and the Privacy Act plaintiffs both filed oppositions to the

defendant's motion to consolidate, arguing that (1) the two cases "present such dissimilar

operative facts and issues that consolidation will not result in economies of any kind or nature,"

Privacy Act Pls.' Opp. at 4; see also Pls.' Mem. at 4-6; (2) the plaintiffs will be prejudiced if the

---

        [12](...continued)
sufficiently intertwined that a thorough factual inquiry with respect to [the] plaintiffs' claims and [the] NASBP's
defenses will necessarily involve overlapping discovery."  Id. at 4-5; see also Def.'s Mem. at 8 (asserting that "[t]he
CAN lies at the focal point of both cases: its truth or falsity, and the presence or absence of privilege(s) attached to
its dissemination, are crucial to all of [the] plaintiffs' claims and all of [the] defendants' defenses").  The NASBP
identifies at least twelve individuals, including the plaintiffs and Special Agent Hamblen, who are likely to have
discoverable information in both cases.  Def.'s Mot. at 5-6; see also Def.'s Mem. at 8.  Moreover, the NASBP
asserts that there are a number of other individuals identified as potential witnesses in the Privacy Act Case who
either "presumably have information relevant to issues related to the dissemination of the CAN" or "who received
the CAN from the federal government" or from the Privacy Act plaintiffs themselves.  Def.'s Mot. at 6-7; see also
Def.'s Mem. at 8.  The defendant states that to the extent that depositions of these individuals will be necessary in the
NASBP Case, consolidation of discovery in the two cases is "a necessary step to ensure that the parties' resources
not be wasted on duplicative travel expense associated with multiple depositions of the same individuals."  Def.'s
Mot. at 7; see also Def.'s Mem. at 9.   The defendant also states that "judicial economy and the efficient
administration of justice" will be aided by consolidation of discovery, in that "the parties in both cases [will be
required] to produce documents responsive to discovery requests only once, and . . . the Court [will] have to consider
only once any objections that a party may interpose in lieu of producing such documents."  Def.'s Mot. at 7; see also
Def.'s Mem. at 9.  In sum, the defendant claims that "an order consolidating these two cases, for purposes of
discovery only, is a necessary and appropriate means for the Court to avoid unnecessary costs and delay."  Def.'s
Mot. at 8 (emphasis added).

cases are consolidated for discovery, given the risk of disclosure of protected information in the

event that the parties' depositions are conducted simultaneously, Pls.' Mem. at 9 (asserting that

"there is certain information that could be elicited during the deposition of a government witness

that will violate the Privacy Act if [the] NASBP is in the room"); see also Privacy Act Pls.' Opp.

at 13 (arguing that "[t]rying to build an artificial barrier to separate the information [the] NASBP

is entitled to obtain from what it is not presents a challenge that is unnecessary, if not practically

impossible, [when conducting a consolidated deposition]"), and therefore the likelihood of

discovery disputes in one case "[that] will necessarily delay the progress of both cases," Privacy

Act Pls.' Opp. at 10; see also id. at 9-11; Pls.' Mem. at 6-10 (arguing that consolidation would

complicate discovery and that depositions should be taken separately); and (3) the NASBP will

not be inconvenienced or prejudiced by the Court denying its motion to consolidate for purposes

of discovery, Privacy Act Pls.' Opp. at 14; Pls.' Mem. at 7-10.[13]

     The NASBP plaintiffs also moved to re-transfer this case to the Middle District of

Florida, arguing that "the circumstances that previously supported transfer have changed" now

that the NASBP is no longer seeking consolidation for all purposes including trial. Pls.' Mem. at

10; see generally id. at 10-13. In response, the defendant contends that "[t]here has been no

substantive 'change' in circumstances . . . [because] the District Court for the Middle District of

Florida . . . clearly contemplated the possibility that the NASBP Case might be re-transferred

---

[13] The plaintiffs suggest that any inconvenience or prejudice inherent in conducting separate discovery for each of the two cases will fall solely and squarely upon them, and state that they are willing to bear whatever additional cost or burden that will occur. Privacy Act Pls.' Opp. at 10 (stating that "[the] Privacy Act [p]laintiffs are willing to incur the additional time and expense of multiple depositions"); Pls.' Mem. at 9 (stating that "[t]he only duplicitous effort [when conducting depositions] will be borne by [the plaintiffs], who may be involved in two depositions of the same witness," and representing that "[the plaintiff] is willing to undertake this expense, as it will allow for issues to be properly segregated in deposition").

[there] at some future date, i.e., for dispositive motions or for trial." Def.'s Opp. at 6.

Additionally, the defendant maintains that "consolidation of the two cases for purposes of

discovery would further the ends of judicial convenience and convenience to the parties." Id.

## II. Standard of Review

Federal Rule of Civil Procedure 42(a) states that "[w]hen actions involving a common

question of law or fact are pending before the [same] court, it may . . . order all the actions

consolidated[,] and it may make such orders concerning proceedings therein as may tend to avoid

unnecessary costs or delay." Fed. R. Civ. P. 42(a). "The decision whether to consolidate cases

under Rule 42(a) is within the broad discretion of the trial court." Am. Postal Workers Union v.

USPS, 422 F. Supp. 2d 240, 245 (D.D.C. 2006) (internal quotation marks and citation omitted).

In determining whether consolidation is appropriate, "courts weigh considerations of

convenience and economy against considerations of confusion and prejudice." Id. (internal

quotation marks and citation omitted); see also Chang v. United States, 217 F.R.D. 262, 265

(D.D.C. 2003) (observing that "[c]onsolidation may increase judicial efficiency by reducing

presentation of duplicative proof at trial . . . [and] eliminating the need for more than one judge

to familiarize themselves with the issues presented") (citation omitted).

In addition, when considering a motion to retransfer an action to its original forum, "the

transfer order . . . bind[s] the [transferee] court . . . in the absence of clear error or manifest

injustice." Hill v. Henderson, 195 F.3d 671, 677 (D.C. Cir. 1999) (citation omitted). However,

where "the [original] purpose of the transfer [is] frustrated" by changed circumstances after the

transfer order has been entered, retransfer may be appropriate. Wells v. Liddy, 115 F. Supp. 2d

1, 2 (D.D.C. 2000) (quoting Russell v. IU Int'l Corp., 685 F. Supp. 172, 176 (N.D. Ill. 1988))

(internal quotation marks omitted); see Koehring Co. v. Hyde Constr. Co., 382 U.S. 362, 365

(1966) (noting the right of litigants "to apply . . . to have [their] case transferred back to [its

original forum] because of changed conditions") (footnote omitted); In re Cragar Indus., 706 F.2d

503, 505 (5th Cir. 1983) (holding that "when . . . post-transfer events frustrate the original

purpose for transfer, a return of the case to the original transferor court does not foul the rule of

the case nor place the transferee court in a position of reviewing the decision of its sister court");

see also 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Fed. Prac. & Proc.

Juris. 3d § 3846 (2006) (stating that "[a] motion to retransfer is perfectly appropriate . . . upon a

showing of changed circumstances") (footnote omitted).  Finally, it is well-settled that "a

plaintiff's choice of forum is [ordinarily] entitled to considerable deference."  Lentz v. Eli Lilly

& Co., Civ. No. 06-1374, ___ F. Supp. 2d. ____, ____, 2006 WL 3704717, at *3 (D.D.C. Dec.

18, 2006) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981)); see also Liban v.

Churchey Group II, 305 F. Supp. 2d 136, 141 (D.D.C. 2004) (stating that "courts generally must

afford substantial deference to the plaintiff's choice of forum") (citation omitted).

### III. Analysis

As an initial matter, the plaintiffs argue that by "misrepresenting" to the Middle District

of Florida court that it sought consolidation for all purposes including trial, Pls.' Mem. at 12, the

defendant circumvented the requirement of 28 U.S.C. § 1407 (2000) that "the transfer of pending

causes of action from one district to another district for pretrial purposes only" be made by the

Judicial Panel on Multidistrict Litigation ("MDL Panel") "after affording all the parties

[including those parties in the Privacy Act Case] . . . the opportunity to appear at a hearing and

present evidence," id. at 13 (quoting In re Corrugated Container Antitrust Litig., 662 F.2d 875,

880 (D.C. Cir. 1981) (internal quotation marks omitted); see also 28 U.S.C. § 1407.  In response,

the defendant contends that "the language of [§ 1407] is permissive, i.e., there is no requirement

that all transfers of cases for purposes of discovery be made by the [MDL Panel]."  Def.'s Opp. at

7 (emphasis in original).  The defendant also asserts that it did not misrepresent the purpose of its

motion to transfer to the Middle District of Florida, because "[i]t was only after transfer had

already taken place that [it] understood that the government would likely decline to agree to a

single trial for both cases, at which point consolidation for the more limited purpose of discovery

became the most viable alternative."  Id.

> Section 1407 clearly states:
>
> When civil actions involving one or more common questions of fact are pending in
> different districts, such actions may be transferred to any district for coordinated or
> consolidated pretrial proceedings.  Such transfers shall be made by the judicial panel
> on multidistrict litigation . . . upon its determination that transfers for such
> proceedings will be for the convenience of parties and witnesses and will promote
> the just and efficient conduct of such actions.

28 U.S.C. § 1407(a) (emphasis added).  Thus, according to the plain text of the statute, the

defendant's contention that "the language of [§ 1407(a)] is permissive" is flatly wrong, Def.'s

Opp. at 7, as the statute confers to the MDL Panel—and to no other body—the power to transfer

cases from one district to another for the purpose of consolidated pretrial proceedings.  See In re

Corrugated Container Antitrust Litig., 662 F.2d at 880 (noting that § 1407(a) "provides for the

transfer of venue of an action for the limited purpose of conducting coordinated pretrial

proceedings") (internal quotation marks and citation omitted); see also  Lopez v. Davis, 531 U.S.

230, 241 (2001) (contrasting "use of the permissive 'may' [with] . . . use of a mandatory 'shall'

in [the text of a statute]"); cf. Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, ___ U.S. ____,

____, 126 S. Ct. 2455, 2459 (2006) (reiterating that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there") (internal quotation marks and citation omitted).

In any event, the Court cannot agree with the plaintiffs that the defendant "did not accurately state its intention to [the Middle District of Florida] court," that the defendant's motion to transfer should have been considered pursuant to § 1407 rather than § 1404, or that the plaintiffs were "deprived of their right to an evidentiary hearing [before the MDL Panel]."  Pls.' Mem. at 13.  The plaintiffs are correct that had the defendant sought transfer and consolidation of its case with the Privacy Act Case for pretrial purposes only, such a motion would properly have been evaluated by the MDL Panel in accordance with § 1407(a).  See 28 U.S.C. § 1407(a) (stating that transfers between judicial districts "for coordinated or consolidated pretrial proceedings . . . shall be made by the [MDL Panel]").  However, at the time of the transfer, the defendant had sought, and the Middle District of Florida had contemplated, "the likely possibility of consolidation for all purposes," including the trial.  Def.'s Opp. at 7 (emphasis added); see also Defendant's Motion to Transfer for Purpose of Consolidation, Scarborough, et al. v. Nat'l Ass'n of Surety Bond Producers, Civ. No. 05-1544 (TBM) (M. D. Fla. Nov. 17, 2005) (declaring the defendant's intention to seek Rule 42(a) consolidation for all purposes once the case was transferred to this judicial district); Transfer Order at 2 (transferring the case to this Court "for all further proceedings").  Thus, the defendant's motion to transfer the NASBP Case was made with the good faith belief that the transfer was "an indispensable first step" to consolidation for all purposes, including the trial, and consequently was properly pursued not through an MDL panel but by application to the Middle District of Florida court, as the trial court in the district in which

the action had been brought.  See 8 James Wm. Moore, et al., Moore's Federal Practice §
42.11[2][a] (4th ed. 2006) (stating that "actions pending in different district courts may be
transferred to other districts [pursuant to 28 U.S.C. § 1404(a)] and then consolidated [for all
purposes] by the transferee court") (emphasis omitted).

Now, however, the defendant no longer seeks consolidation for all purposes.  See Def.'s
Mot. at 8 (stating that the defendant "does not seek consolidation of the two cases for trial");
Def.'s Mem. at 9 (stating that "[the] NASBP proposes consolidation only for the limited purpose
of discovery . . . such that the two cases would still be tried separately").  According to the
defendant, it reversed its position when it learned after the transfer "that the government would
likely decline to agree to a single trial for both cases, at which point consolidation for the more
limited purpose of discovery became the most viable alternative."  Def.'s Opp. at 7.  Yet, despite
its own admission that the NASBP Case must eventually be returned to the Middle District of
Florida for trial, Def.'s Mem. at 9 (acknowledging that "the two cases would still be tried
separately"), the defendant argues that "re-transfer at this time would not be appropriate . . .
[because] it makes no sense for two courts to oversee discovery in two cases that involve similar
parties and similar issues," Def.'s Opp. at 6 (emphasis omitted).  The defendant further asserts
that consolidation for discovery "will cause no prejudice to either party."  Def.'s Mem. at 9.  The
Court disagrees with the defendant on both counts.

As previously discussed, a change of circumstances may warrant retransfer of an action to
the forum where it was initially filed, Koehring, 382 U.S. at 365, particularly when the changed
circumstances frustrate the original purpose of the transfer, Wells, 115 F. Supp. 2d at 2; see also,
e.g., In re Cragar Indus., 706 F.2d at 505; Russell, 685 F. Supp. at 175-76.  This is especially true

14

where, as here, the transferor court clearly contemplated that the case might be retransferred if

this Court deemed it appropriate.  Transfer Order at 2.  And it appears that the defendant's post-

transfer realization "that the government would likely decline to agree to a single trial for both

cases" frustrated the purpose of transfer, at least to the extent that the NASBP originally sought

to consolidate the two cases for all purposes, including the trial.  Def.'s Opp. at 7.  Accordingly,

the Court agrees with the plaintiffs that the circumstances surrounding the transfer of this case

from the Middle District of Florida have changed and, because consolidation for trial was the

linchpin upon which transfer was apparently predicated, that "the current circumstances no

longer warrant having this action before [this Court]."  Pls.' Opp. at 11-12.  Moreover, because

the discovery process has not yet commenced, and because this case will not be tried in this

judicial district, see Def.'s Mem. at 9, the Court cannot envision how any party will be prejudiced

by acquiescing to the plaintiffs' original choice of forum, see Liban, 305 F. Supp. 2d at 141, and

retransferring this action—which involves claims brought solely under Florida state law—to the

Florida court where the matter will eventually be resolved through dispositive motions,

settlement, or trial.  See Wells, 115 F. Supp. 2d at 1-2 (retransferring case where circumstances

no longer supported consolidation in the transferee court); Russell, 685 F. Supp. at 175-76

(same).  Neither the NASBP nor the Privacy Act defendants will be required to undertake

duplicative discovery regardless of whether or not the two actions are consolidated for discovery

purposes, see Pl.'s Mem. at 8-9 (observing that "[w]ith or without consolidation, [the] NASBP

will be required to subpoena any government witness it wishes to depose, . . . travel to their

location[,] . . . [and] take the depositions it wants of government witnesses at least once"), and to

the extent the plaintiffs will need to conduct duplicative discovery if the actions are not

consolidated, they are willing to do so, see Privacy Act Pls.' Opp. at 10 (stating that "[the] Privacy Act [p]laintiffs are willing to incur the additional time and expense of multiple depositions"); Pls.' Mem. at 9 (stating that "[t]he only duplicitous effort [when conducting depositions] will be borne by [the plaintiffs], who may be involved in two depositions of the same witness," and representing that "[the plaintiff] is willing to undertake this expense, as it will allow for issues to be properly segregated in deposition").

Moreover, even assuming arguendo that "it would be more conducive to judicial economy and the efficient administration of justice for the parties in both cases to produce documents responsive to discovery requests only once," to conduct a single set of depositions to the extent that witnesses in the two cases overlap, and to allow the Court "to consider only once any objections that a party may interpose" during the discovery process, Def.'s Mot. at 7, the Court must "weigh considerations of convenience and economy against considerations of confusion and prejudice" in determining whether consolidation is appropriate, Am. Postal Workers Union v. USPS, 422 F. Supp. 2d at 245 (internal quotation marks and citation omitted). Here, given the plaintiffs' representation, undisputed by the defendant, that "there is certain information that could be elicited during the deposition of a government witness that will violate the Privacy Act if [the] NASBP is in the room[, but which] could be discussed freely between the government and [the Privacy Act plaintiffs]," Pls.' Opp. at 9-10, it is evident that any convenience and efficiency derived from consolidating discovery will be more than counterbalanced by the concomitant prejudice the plaintiffs would likely sustain.  See Privacy Act Pls.' Opp. at 12 (noting "the very real possibility of inadvertent disclosure, in the heat of the deposition, of investigative and other information that the [g]overnment is entitled [to] and has

16

stated its intention to protect from [the] NASBP").  As the plaintiffs state, "[i]f every time such issues arise, the parties have to debate whether NASBP must be excluded or, in the absence of agreement, file motions for protective orders before this Court, all parties would incur additional expenses and this Court's time would be taken up by numerous discovery disputes."[14]  Id. at 10; see also Privacy Act Pls.' Opp. at 12 (asserting that "any disputes between [the] NASBP and the [g]overnment[—]which are very likely, if not certain, to occur[—]will necessarily delay [the] Privacy Act [p]laintiffs' discovery, to [the] Privacy Act [p]laintiffs' detriment").  Thus, given the undisputed likelihood that sensitive information will be disclosed during depositions in the Privacy Act case to which the NASBP will not be entitled, the NASBP's stated interest in "the efficient administration of justice" and in "ensur[ing] that the parties' resources [are not] wasted on duplicative travel expense associated with multiple depositions of the same individuals" is simply not sufficient to counterbalance the probability that the plaintiffs will be prejudiced by joint proceedings, particularly when the NASBP itself will not be required to incur costs by deposing any witness more than once.[15]  Def.'s Mot. at 7.  Finally, because these two matters will be tried separately if they proceed to trial, see Def.'s Mem. at 9, it is logical to allow the judges who will eventually preside over the trials to also preside over the concomitant discovery processes, so as to afford them the opportunity to become acquainted with the factual and legal

---

[14]  Indeed, for this reason, the Court is inclined to agree with the plaintiffs that such concerns would complicate, rather than facilitate, the efficient and economical administration of the discovery process in these cases. See Pls.' Mem. at 8-10; Privacy Act Pls.' Opp. at 9-13.

[15]  In addition, while the truth of the statements contained in the CAN or the question of whether the CAN itself was in the public domain before its publication in the Pipeline newsletter might be relevant to one or more of the NASBP's affirmative defenses, see Def.'s Opp. at 4-5, and while the NASBP might believe it otherwise necessary to depose government witnesses or request the production of documents held by the Privacy Act defendants, see Def.'s Mot. at 5-7, it can seek to obtain all such discovery through the avenues provided for third-party discovery in the Federal Rules of Civil Procedure without consolidating the cases' discovery processes.  See Fed. R. Civ. P. 34(c); see also Pls.' Mem. at 7-8.

issues presented in their respective cases.  The Court therefore concludes that this matter should

be retransferred to the Middle District of Florida.

### IV. Conclusion

For the reasons stated above, the Court will grant the plaintiffs' motion to retransfer this

action to the Middle District of Florida.  In doing so, the Court is quite mindful that it must not

engage in a game of "judicial ping pong," Joyner v. Reno, Civ. No. 00-2006 (RBW), ___ F.

Supp. 2d ____, ____, 2006 WL 3531718, at *8 (D.D.C. Dec. 7, 2006) (internal quotation marks

and citation omitted), nor pass judgment on the wisdom of its sister court's original transfer

decision, see In re Cragar Indus., 706 F.2d at 505.  Rather, the Court concludes that (1) the

circumstances supporting the transfer of this action to this Court have changed, see Koehring,

382 U.S. at 365; (2) the transferor court expressly contemplated the possibility that this Court

would find that consolidation was inappropriate and that the case should be returned to the

Middle District of Florida for trial, Transfer Order at 2; and (3) it is likely that the plaintiffs in

both this action and the Privacy Act Case would be prejudiced by consolidated discovery

proceedings, see Pls.' Mem. at 8-10; Privacy Act Pls.' Opp. at 9-13.  Accordingly, it makes the

most sense to allow the court that will eventually preside over the resolution of this matter to also

preside over the discovery process, especially in the absence of any prejudice the parties will

sustain as a result of this action being retransferred to the Middle District of Florida.  The

plaintiffs' motion to retransfer is therefore granted, and the defendant's motion to consolidate

discovery is denied.

**SO ORDERED** this 7th day of February, 2007.[16]

REGGIE B. WALTON
United States District Judge

---

[16] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

19